UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MICHEL THOMAS,

      Petitioner,

v.                        Case No: 2:14-cv-95-FtM-29MRM

SECRETARY, DOC and FLORIDA
ATTORNEY GENERAL,

      Respondents.[1]

_____

## OPINION AND ORDER

This matter comes before the Court upon an amended petition for habeas corpus relief filed pursuant to 28 U.S.C. § 2254 by Michel Thomas ("Petitioner") who is presently confined at the Martin Correctional Institution in Indiantown, Florida (Doc. 5, filed March 7, 2014). Petitioner, proceeding *pro se*, attacks the convictions and sentences entered against him by the Twentieth Judicial Circuit Court in Charlotte County, Florida for second degree murder. Id. Respondent filed a response to the petition (Doc. 19). Petitioner filed a reply (Doc. 45).

---

[1] When the petitioner is incarcerated and challenges his present physical confinement "the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." Rumsfeld v. Padilla, 542 U.S. 426, 436 (2004)(citations omitted). In Florida, the proper respondent in this action is the Secretary of the Florida Department of Corrections. Therefore, the Florida Attorney General will be dismissed from this action.

Petitioner raises seven claims in his petition.  Upon due consideration of the pleadings and the state court record, the Court concludes that each claim must be dismissed or denied. Because the Court may resolve the Petition on the basis of the record, an evidentiary hearing is not warranted.  See Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (if the record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing).

I.   **Background and Procedural History**

On July 2, 2004, Petitioner was charged by information with second degree murder in violation of Florida Statute § 782.04(2) (Ex. 1 at 4).[2]  After a jury trial, he was found guilty as charged (Ex. 1 at 176-79).  He was sentenced to thirty-five years in prison (Ex. 1 at 191).  Petitioner's conviction and sentence were affirmed by Florida's Second District Court of Appeal (Ex. 4); Thomas v. State, 42 So. 3d 241 (Fla. 2d DCA 2010).

Petitioner filed a state petition for writ of habeas corpus in which he alleged that appellate counsel was ineffective for failing to argue that the trial court erred when it denied defense counsel's motion for a judgment of acquittal (Ex. 14).  The motion

---

[2] Citations to exhibits are to those filed by Respondent on September 10, 2014 (Doc. 21).  Citations to the trial transcript, located in Exhibit One, will be cited as (T. at ___).

was denied by Florida's Second District Court of Appeal (Ex. 15); Thomas v. State, 83 So. 3d 727 (Fla. 2d DCA 2012).

Petitioner filed an amended motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure ("Rule 3.850 motion") (Ex. 21)  The motion was denied by the post-conviction court, and Florida's Second District Court of Appeal *per curiam* affirmed (Ex. 25; Ex. 30); Thomas v. State, 132 So. 3d 234 (Fla. 2d DCA 2013).

Petitioner filed his original 28 U.S.C. § 2254 petition on February 18, 2014 (Doc. 1).  His amended petition is presently before the Court (Doc. 5).

## II.  Governing Legal Principles

### A.  Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  This standard is both mandatory and difficult to meet.  White v. Woodall, 134 S. Ct. 1697, 1702 (2014).  A state

court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference. Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008). Notably, a state court's violation of state law is not sufficient to show that a petitioner is in custody in violation of the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Wilson v. Corcoran, 562 U.S. 1, 16 (2010).

"Clearly established federal law" consists of the governing legal principles, rather than the dicta, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision. White, 134 S. Ct. at 1702; Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)). That said, the Supreme Court has also explained that "the lack of a Supreme Court decision on nearly identical facts does not by itself mean that there is no clearly established federal law, since 'a general standard' from [the Supreme Court's] cases can supply such law." Marshall v. Rodgers, 133 S. Ct. 1446, 1449 (2013) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). State courts "must reasonably apply the rules 'squarely established' by [the Supreme] Court's holdings to the facts of each case. White, 134 S. Ct. at 1706 (quoting Knowles v. Mirzayance, 556 U.S. 111, 122 (2009)).

Even if there is clearly established federal law on point, habeas relief is only appropriate if the state court decision was

"contrary to, or an unreasonable application of," that federal law. 29 U.S.C. § 2254(d)(1).  A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts.  <u>Ward v. Hall</u>, 592 F.3d 1144, 1155 (11th Cir. 2010); <u>Mitchell v. Esparza</u>, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, <u>Brown v. Payton</u>, 544 U.S. 133, 134 (2005); <u>Bottoson v. Moore</u>, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply."  <u>Bottoson</u>, 234 F.3d at 531 (quoting <u>Williams</u>, 529 U.S. at 406).  The unreasonable application inquiry "requires the state court decision to be more than incorrect or erroneous," rather, it must be "objectively unreasonable."  <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75-77 (2003) (citation omitted); <u>Mitchell</u>, 540 U.S. at 17-18; <u>Ward</u>, 592 F.3d at 1155.  The petitioner must show that the state court's ruling was "so lacking in justification

that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." White, 134 S. Ct. at 1702 (quoting Harrington v. Richter, 562 U.S. 86 (2011)). Moreover, "it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." Knowles, 556 U.S. at 122.

Finally, when reviewing a claim under § 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Burt v. Titlow, 134 S. Ct. 10, 15 (2013) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.") (quoting Wood v. Allen, 558 U.S. 290, 293 (2010)).

**B.  Standard for Ineffective Assistance of Counsel**

In Strickland v. Washington, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. 466 U.S. 668, 687-88 (1984). A petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness and that the

deficient performance prejudiced the defense. Id.   This is a "doubly deferential" standard of review that gives both the state court and the petitioner's attorney the benefit of the doubt. Burt, 134 S. Ct. at 13, (citing Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011)).

The focus of inquiry under Strickland's performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688-89.   In reviewing counsel's performance, a court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance."   Id. at 689.   Indeed, the petitioner bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable[.]" Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006).   A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a "highly deferential" level of judicial scrutiny. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690).

As to the prejudice prong of the Strickland standard, Petitioner's burden to demonstrate prejudice is high. Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002).   Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687.   That is, "[t]he defendant

must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

The foregoing analysis also applies to claims of ineffective assistance of appellate counsel.  "A defendant can establish ineffective assistance of appellate counsel by showing: (1) appellate counsel's performance was deficient, and (2) but for counsel's deficient performance he would have prevailed on appeal." Shere v. Sec'y, Fla. Dep't of Corr., 537 F.3d 1304, 1310 (11th Cir. 2008) (citing Smith v. Robbins, 528 U.S. 259, 285-86 (2000)).

### C.   Exhaustion and Procedural Default

The AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless a petitioner has exhausted all means of available relief under state law. Exhaustion of state remedies requires that the state prisoner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]" Duncan v. Henry, 513 U.S. 364, 365 (1995) (citing Picard v. Connor, 404 U.S. 270, 275-76 (1971)).  The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of

the claim or a similar state law claim.   Snowden v. Singletary, 135 F.3d 732 (11th Cir. 1998).

In addition, a federal habeas court is precluded from considering claims that are not exhausted and would clearly be barred if returned to state court. Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991) (if a petitioner has failed to exhaust state remedies and the state court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims).

Finally, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law. Coleman, 501 U.S. at 750.   If a petitioner attempts to raise a claim in a manner not permitted by state procedural rules, he is barred from pursuing the same claim in federal court. Alderman v. Zant, 22 F.3d 1541, 1549 (11th Cir. 1994).

A petitioner can avoid the application of procedural default by establishing objective cause for failing to properly raise the claim in state court and actual prejudice from the alleged constitutional violation. Spencer v. Sec' y, Dep't of Corr., 609 F.3d 1170, 1179–80 (11th Cir. 2010). To show cause, a petitioner

"must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." Wright v. Hopper, 169 F.3d 695, 703 (11th Cir. 1999); Murray v. Carrier, 477 U.S. 478 (1986).  To show prejudice, a petitioner must demonstrate there is a reasonable probability the outcome of the proceeding would have been different. Crawford v. Head, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

A second exception, known as the fundamental miscarriage of justice, only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent[.]" Murray v. Carrier, 477 U.S. 478, 479-80 (1986).  Actual innocence means factual innocence, not legal insufficiency. Bousley v. United States, 523 U.S. 614, 623 (1998).  To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. Schlup v. Delo, 513 U.S. 298, 327 (1995).  "To be credible, a claim of actual innocence must be based on [new] reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324).

## III. **Analysis**

### A.   **Claim One**

Petitioner claims that reversible error resulted when "irrelevant and highly prejudicial evidence" was admitted at his

trial (Doc. 5 at 4).   Specifically, he asserts that prior to trial, the State agreed not to introduce evidence that: (1) Petitioner made a statement to law enforcement upon arrest; and (2) a gun residue test was performed on Petitioner. Id.

At issue in this claim is testimony elicited from prosecution witness Captain Thomas Lewis.   Captain Lewis testified that he assisted in establishing a crime scene after the victim was shot and was subsequently called to a traffic stop of two females and three males in separate cars (T. at 372-73).

> STATE:    And what did you do after you made contact with all those individuals out there?
>
> LEWIS:    The two North Port police officers advised me that the – we had issued a BOLO –
>
> COURT:    He didn't ask for conversation; he asked what you did, sir.
>
> LEWIS:    Okay.  I spoke with the two North Port officers, and then I also read – or also advised the three black males of their Miranda rights while they were sitting in the police car.
>
> DEFENSE:  Objection, Judge.   May we approach?
>
> COURT:    Stay in touch.  Not – not at that question yet.
>
> STATE:    After you made contact with the individuals did you go anywhere?

LEWIS:      I did.   I responded to the
            Sarasota County Jail.

STATE:      And who did you make contact
            with there?

LEWIS.      All – all of the same people
            that I had mentioned to you.

STATE.      Now,  specifically,  did  you
            make  contact  with  a  Michel
            Thomas?

LEWIS.      Yes, sir, I did.

STATE.      Okay. And when you made contact
            with  Michel  Thomas,  did  you
            collect anything from him?

LEWIS.      Yes, sir, I did.

STATE.      What did you collect?

LEWIS.      I  collected  –  I  performed  a
            gunshot  residue  kit  and  I
            collected  that  for  evidence,
            which  ultimately  came  back
            positive from –

DEFENSE.    Objection, Judge.

COURT.      Objection sustained.

Id. at 373-75.   Outside of the presence of the jury, defense

counsel asked for a mistrial on the bases that a reference had

been made to a gunshot residue test and testimony had been heard

as to the results of the test.  Id. at 380.  The trial court asked

whether the state intended to introduce the results of the residue

test at trial, and the state responded:

            I can tell the Court, in all due candor, that
            the GSR kit had been evaluated and a report
            had, in fact, been produced and they confirmed

> what Mr. Lewis had said. However, that
> particular analyst is currently unavailable
> because of the fact that he had a surgery that
> had to be done and had scheduled and he
> wouldn't be available until next May.

Id. at 383. The court declined to grant a mistrial, but gave the

jurors the following cautionary instruction:

> Members of the jury, I just have a cautionary
> instruction because of some testimony that was
> presented that I have to give you at this time.
>
> There was testimony that a residue kit was
> used and the answer came back positive.
> Please understand that means nothing in this
> case. It does not mean that he – that the
> defendant fired a gun; doesn't mean that he
> handled a gun. It could come from all kinds
> of different sources, and there's been no
> testimony to establish any – anything further.
> So please disregard anything in that regard.

Id. at 386-87. Petitioner now asserts that the trial court abused

its discretion when it denied his motion for a mistrial (Doc. 5 at

4).

Petitioner raised this claim on direct appeal where he argued,

in terms of state law only, that the trial court erred by allowing

"the admission of irrelevant and highly prejudicial evidence" (Ex.

2 at 7). However, Petitioner made no reference to due process or

to any other constitutional error in his brief on appeal. Id.

Respondent now asserts that Claim One is unexhausted because

Petitioner did not preserve at trial and raise on appeal a

constitutional claim that would trigger federal due process

scrutiny (Doc. 19 at 22). As a result, he deprived the Florida

trial and appellate courts of the opportunity to address the constitutional dimension of Claim One. Id. The Court agrees that Petitioner's state law argument presented on direct appeal leaves § 2254(b)(1)'s exhaustion requirement unsatisfied. Duncan, 513 U.S. at 365-66.

For a habeas petitioner to fairly present a federal claim to state courts:

> It is not sufficient merely that the federal habeas petitioner has been through the state courts . . . nor is it sufficient that all the facts necessary to support the claim were before the state courts or that a somewhat similar state-law claim was made. Rather, in order to ensure that state courts have the first opportunity to hear all claims, federal courts "have required a state prisoner to present the state courts with the same claim he urges upon the federal courts." While we do not require a verbatim restatement of the claims brought in state court, we do require that a petitioner presented his claims to the state court "such that a reasonable reader would understand each claim's particular legal basis and specific factual foundation.

McNair v. Campbell, 416 F.3d 1291, 1302-03 (11th Cir. 2005) (emphasis added) (internal citations omitted). Simply put, "[t]he exhaustion doctrine requires the petitioner to 'fairly present' his federal claims to the state courts in a manner to alert them that the ruling under review violated a federal constitutional right." Pearson v. Sec'y, Dept. of Corr., 273 F. App'x 847, 849-50 (11th Cir. 2008) (internal citation omitted). As part of such a showing, the claim presented to the state courts "must include

reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief." Reedman v. Thomas, 305 F. App'x 544, 545-46 (11th Cir. 2008) (internal citation omitted).

In the case at hand, Petitioner made no reference to his federal constitutional rights, and as a result, he did not properly exhaust this claim. See Pearson, 273 F. App'x at 847 (claim unexhausted when petitioner cited exclusively to state cases, all of his substantive arguments addressed state law, and nothing in the argument alerted the state court to a federal due process claim); Cook v. McNeil, 266 F. App'x 843 (11th Cir. 2008)(due process claim procedurally barred because the petitioner did not alert the state court to the alleged federal nature of his claim).

In his reply, Petitioner concedes that his claim "was addressed from the state law perspective," but claims that he directed appellate counsel to "federalize" his claim and that appellate counsel's failure to do so excuses his default (Doc. 45 at 3).  Although ineffective assistance of appellate counsel can operate to provide cause for the procedural default of a claim of trial court error, Petitioner must have first exhausted the underlying ineffective assistance of appellate counsel claim, which he did not do. See Edwards v. Carpenter, 529 U.S. 446, 450-51 (2000) (concluding that a federal habeas court is barred from considering a procedurally defaulted ineffective assistance of

counsel claim as cause for procedural default of another claim);
Hill v. Jones, 81 F.3d 1015, 1029-31 (11th Cir. 1996) (noting that
the Supreme Court's jurisprudence on procedural default dictate
that procedurally defaulted claims of ineffective assistance
cannot serve as cause to excuse a default of a second claim). Nor
has Petitioner presented new, reliable evidence to support an
actual innocence claim. Schlup v. Delo, 513 U.S. 298, 324 (1995).
Consequently, the ineffective assistance of appellate counsel
claim, raised for the first time in Petitioner's reply (Doc. 45),
does not satisfy the cause and prejudice, or fundamental
miscarriage of justice exceptions to overcome the procedural
default of Claim One.   Florida's procedural rules and time
limitations preclude a second direct appeal. Fla. R. App. P.
9.140(b)(3) (defendant wishing to appeal a final judgment must do
so within "30 days following rendition of a written order").
Consequently, Claim One is procedurally barred and cannot be
considered by this Court.

Even if Claim One had been properly exhausted, Petitioner is
not entitled to federal habeas corpus relief. See 28 U.S.C. § 2254
(b)(2) ("An application for a writ of habeas corpus may be denied
on the merits, notwithstanding the failure of the applicant to
exhaust the remedies available in the courts of the State").   The
erroneous or improper admission of evidence does not provide a
basis for habeas relief unless it rendered the trial fundamentally

unfair in violation of due process. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Carrizales v. Wainwright, 699 F.2d 1053, 1053-54 (11th Cir. 1983).[3]  In order to justify habeas relief, Petitioner must show that the admission of the evidence "had substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 617, 637 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)). "To show prejudice under Brecht, there must be more than a reasonable possibility that the error contributed to the conviction or sentence." Mason v. Allen, 605 F.3d 1114, 1123 (11th Cir. 2010) (internal quotation marks and alteration omitted). Although harmless error review is necessarily fact-specific and must be performed on a case-by-case basis, the erroneous admission of evidence is likely to be harmless under the Brecht standard where, as in the instant case, there is significant corroborating evidence or where other evidence of guilt is overwhelming, Prevatte v. French, 547 F.3d 1300, 1305-06 (11th Cir. 2008); Grossman v. McDonough, 466 F.3d 1356, 1337-1340 (11th Cir. 2006).

Evidence was presented at trial that Petitioner and two other people were in a white pickup truck that attempted to block the victim as he left a convenience store on his bicycle (T. at 209,

---

[3] To the extent Petitioner challenges the admission of the evidence under state law, the claim is not cognizable on federal habeas review. See Estelle, 502 U.S. at 67-68.

211, 259-61, 274, 276, and 349).  Petitioner was observed exiting the truck and chasing the victim. Id. at 213, 214, 261, 276, and 349.  Witness Dameon Mitchell saw Petitioner fumble with his waistband as he gave chase to the victim. Id. at 213-14.  Witness Lauren Bergeron saw Petitioner slide what appeared to be a gun into his right pocket as he chased the victim. Id. at 265.  Witness Jason Hussey saw Petitioner pull something out of his clothing as he chased the victim, and he saw that Petitioner was holding a gun when he returned to the truck after gunshots were fired. Id. at 349, 351.  Damean Mitchell, Sharod Williams, and Jason Hussey each heard gunshots soon after they observed Petitioner begin chasing the victim. Id. at 215, 277, and 350.  The white pickup truck was pulled over by the police shortly thereafter, and a handgun and ammunition were found in the back seat. Id. at 323-24, 398-99. Ballistics testing indicated that the gun was likely used to fire the shots that killed the victim. Id. at 426.

Given the magnitude of the state's evidence against Petitioner and the curative instruction to the jury to disregard Captain Lewis' comment on the gunshot residue test, the Court concludes that Captain Lewis' erroneously admitted statement had no substantial and injurious effect on the jury's verdict. See Weeks v. Angelone, 528 U.S. 225, 226 (2000) (a jury is presumed to follow its instructions).  Moreover, although the Supreme Court has been clear that a writ should issue when constitutional errors

have rendered a trial fundamentally unfair, see Williams, 529 U.S. at 375, it has not yet made a clear ruling that the admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ. Absent such "clearly established Federal law," the state court's denial of this claim was not an "unreasonable application" of clearly established federal law. Musladin, 549 U.S. at 77; Wright v. Van Patten, 552 U.S. 120, 125-26 (2008) (holding that state court could not have unreasonably apply federal law if no clear Supreme Court precedent existed).

Under the strict standards of AEDPA, this claim fails to establish entitlement to a federal writ of habeas corpus. In addition to being unexhausted, Claim One is denied on the merits.

**B.  Claim Two**

Petitioner asserts that appellate counsel was ineffective for failing to argue on direct appeal that the trial court erred by denying his motion for a judgment of acquittal since no direct evidence showed that he was the one who shot the victim (Doc. 5 at 6). Petitioner raised this claim in his state habeas petition where it was denied by Florida's Second District Court of Appeal without a written opinion (Ex. 15).

Respondent argues that Claim Two fails to satisfy either prong of Strickland because: (1) counsel was not objectively unreasonable for not raising the proposed claim; and (2) "viewing

the evidence in the light most favorable to the [state], a rational jury could find that Thomas was the individual who shot the victim in the bact." (Doc. 19 at 32, 38).  The Court agrees that Petitioner has failed to show either deficient performance or resulting prejudice.

In moving for a judgment of acquittal, a defendant "admits not only the facts stated in the evidence adduced, but also admits every conclusion favorable to the adverse party that a jury might fairly and reasonably infer from the evidence." Beasley v. State, 774 So.2d 649, 657 (Fla. 2000) (quoting Lynch v. State, 293 So.2d 44, 45 (Fla. 1974)).  Under Florida law, the elements of second degree murder are: (1) the victim is dead; (2) the death was caused by the criminal act of the defendant; and (3) the unlawful killing was by any act imminently dangerous to another and evincing a depraved mind regardless of human life. See Connolly v. State, 172 So. 3d 893 (Fla. 3d DCA 2015); Fla. Stat. § 782.04(2).

Testimony was presented at Petitioner's trial that the victim was dead (T. at 236-37).  Testimony was also presented that Petitioner chased the victim with an object which appeared to be a gun.  Witnesses testified that gunshots were fired.  The gun responsible for the victim's death was shortly thereafter found, along with Petitioner, in a vehicle identified as the one involved in the altercation with the victim. See discussion supra Claim One.  Reasonable appellate counsel could have concluded that, when

viewed in the light most favorable to the state, the evidence was sufficient for the jury to find Petitioner guilty of second degree murder. Gissendaner v. Seaboldt, 735 F.3d 1311, 1323 (11th Cir. 2013)(recognizing that all that is required under Strickland to withstand constitutional scrutiny is a showing that "some reasonable lawyer" could have pursued the challenged course of conduct). As such, reasonable appellate counsel could have concluded that there was little or no chance for this argument to succeed on direct appeal. See Heath v. Jones, 941 F.2d 1126, 1132 (11th Cir. 1991) (neglected claim satisfies test for ineffective assistance of appellate counsel only if claim had "a reasonable probability of success on appeal"); Evitts v. Lucey, 469 U.S. 387, 394 (1985) (recognizing that appellate counsel "need not advance *every* argument, regardless of merit, urged by the appellate.")(emphasis in original).

The state court's rejection of this claim was neither contrary to Strickland nor based upon an unreasonable determination of the facts. Claim Two is denied pursuant to 28 U.S.C. § 2254(d).

### C.   Claim Three

Petitioner asserts that trial counsel was ineffective for failing to call as defense witnesses Roy Wiley, Robert Longmire, Charles McCormick, Jr., and Officer Pufuhl (Doc. 5 at 8). Petitioner asserts that "[t]hese witnesses' testimony would have refuted the State's entire case in chief, and without it there was no evidence

to place the State's theory of prosecution into doubt." Id. Specifically, Petitioner argues that "[a] thorough review of the record to this case will show that Mr. Thomas would have had to have shot through Mr. Edmondson to have actually been the shooter of Jewaun Platt." Id.

Petitioner raised this claim in his Rule 3.850 motion (Ex. 19). The post-conviction court discussed each proposed witness separately and denied the claim -- primarily on the ground that Petitioner could not demonstrate Strickland prejudice from counsel's failure to call any particular witness (Ex. 25). Florida's Second District Court of Appeal per curiam affirmed (Ex. 30). The Court concludes that Petitioner has failed to satisfy either prong of the Strickland test for ineffectiveness.

First, Petitioner's disagreement with counsel's tactics or strategy will not support a claim of ineffective assistance of counsel. The Eleventh Circuit Court of Appeals has noted that deciding which witnesses, if any, to call "is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess." Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995). Furthermore, "[i]t is well-settled in [the Eleventh] Circuit that a petitioner cannot establish an ineffective assistance claim simply by pointing to additional evidence that could have been presented" which is precisely what Petitioner attempts to do in his habeas petition. Van Poyck v. Fla. Dep't of Corr., 290 F.3d 1318, 1324 (11th Cir. 2002) (per curiam).

Next, upon review of each proposed witness' statements to the police, the Court agrees with the state courts that Petitioner has not demonstrated prejudice from counsel's failure to call these witnesses.

### 1. Roy Wiley

Petitioner asserts that Wiley testified in his deposition that he, McCormick, and Longmire each identified the shooter as wearing a sports jersey (Doc. 5 at 8).[4]  The post-conviction court concluded that defense counsel's failure to call Roy Wiley as a witness could not have resulted in prejudice because "[t]he trial testimony of other witnesses supported and repeated Wiley's testimony." (Ex. 25 at 3-4).

In his deposition, Wiley said that he saw the victim run by him and then heard "pop, pop, pop, pop, pop." (Ex. 23 at Wiley Deposition).  The following exchange occurred:

> Q.   Okay.  Let me stop you there for a minute.  Do you – did you actually see a gun?
>
> A.   No.  I saw the – I heard the pop, and I saw the – like a flash.
>
> Q.   The flash.  But you didn't actually see a gun?

_____

[4] Petitioner's § 2254 habeas petition does not describe the clothing he was wearing on the evening of the shooting.  Although the post-conviction court states that Witness Lewis introduced Petitioner's "red clothing" into evidence, the color of the clothing introduced into evidence does not appear to be described in the trial transcript (T. at 387-89).

> A.        I didn't see the gun.
>
> Q.        Are you able to identify, or were
>           you able to identify the person who
>           you saw the flash come from their
>           hand or hand area?  Were you able
>           to identify that person?
>
> A.        What I identified was the clothing
>           at that time that the guy had on.
>           Which I described was a white, I
>           think if I can remember correctly,
>           I think it was a red, um – the red
>           stripe on the short pants, and I
>           think it was a red color on the top.

Id.  Wiley did not state in his deposition that the shooter wore

a sports jersey.  Moreover, his description of the shooter's

clothing was consistent with that of Witness Hussey who testified

that the shooter was wearing a shirt with vertical stripes (T. at

347, 349).  Petitioner has not demonstrated that the introduction

of Wiley's testimony would have affected the outcome of the trial.

### 2.  Robert Longmire

Robert Longmire stated in his deposition that he had not seen

the faces of any of the three people in the pickup truck (Ex. 23,

Longmire deposition at 20).  He testified that two of the occupants

chased the victim; one had on a dark shirt and the other a light

shirt. Id. at 22.  Longmire was not sure which person had the gun,

but he did notice one of the chasers lifted his shirt "like they

were pulling something out of their pants." Id. at 21.  When asked

to describe the shirt of the chaser who lifted his shirt, Longmire

expressed confusion:

> A.    I don't know.  I think it was the guy
>        with the jersey.  I don't know.
>
> Q.    Was it the light colored shirt or one of
>        the dark ones?
>
> A.    Light colored because that's the only
>        shirt I could see.  Yeah it had to be the
>        light colored shirt.
>
> Q.    So you wouldn't have known any of these
>        guys' faces from where you were at, you
>        just knew what their shirts and hair
>        looked like.
>
> A.    Yeah.

Id. at 27.  When asked whether he had described the jersey as red
in his police statement, Longmire admitted that "it could have
been." Id. at 31.  Longmire also admitted in his deposition that
he did not see the shooting and that he did not know who actually
fired the shots. Id. at 32.

Given Longmire's confusion as to the events that transpired
during the shooting, the trial court reasonably concluded that
Petitioner did not show how Longmire's failure to testify resulted
in prejudice (Ex. 24 at 4).  Moreover, the probable cause affidavit
does not differentiate between statements of Witnesses Longmire
and McCormick, Jr. (Ex. 23 at Probable Cause Affidavit).  The
affidavit specifically states that these witnesses identified the
shooter as Michel Thomas (Petitioner). Id.  Based on the affidavit
alone, reasonable counsel could have decided against calling
Longmire as a witness at trial.

### 3.    Charles McCormick, Jr.

No deposition was taken of Charles McCormick, Jr.  However, the probable cause affidavit summarized his statements which do not contradict any witness' testimony at trial and which identify Petitioner as the person who fired shots at the victim as he ran away (Ex. 23 at Probable Cause Affidavit).[5]  Reasonable counsel could have decided against calling McCormick as a witness.

Moreover, defense counsel filed a motion to exclude McCormick from testifying at trial on the ground that he had not been able to locate him (Ex. 23 at Motion to Exclude Witnesses and Testimony).  "Counsel cannot be said to be ineffective for failing to call an unavailable witness." Williamson v. Moore, 221 F.3d 1177, 1182 (11th Cir. 2000).

### 4.    Officer Gregory Pufahl

No deposition was taken of Officer Gregory Pufahl.  Instead, Petitioner directs the Court to a report written by Officer Pufahl which described a "show-up" identification involving witnesses Wiley, Longmire, and McCormick, Jr.:

> The identifications were conducted in the following manner:  All witnesses were advised that they may or may not see subjects who were involved in the shooting, the witnesses were told that if they were unsure if the subjects were involved, they should not identify them. The suspects were brought back one at a time. The witnesses were also brought up one at a

---

[5] The affidavit does not differentiate between statements of Longmire and McCormick, Jr.

> time.  The suspect order was Michel Thomas,
> Leatric Reid and Emanuel Edmondson.  The
> witnesses order each time was Wiley, Longmire
> and McCormick.
>
> The first suspect brought back was Michel
> Thomas.  None of the witnesses were able to
> provide a positive identification.  The next
> suspect was Leatric Reid; witness McCormick
> identified him as being the second one running
> down the street after the victim.  The third
> suspect was Emanuel Edmondson.  Witness
> Longmire positively identified him as being
> the first who was running after the victim.
> Witness McCormick also positively identified
> Edmondson as chasing the victim down the
> street.
>
> All the witnesses were also individually shown
> the suspect vehicle and advised that it may or
> may not be the vehicle involved.  Witness
> Longmire positively identified the truck.
> Witness McCormick also positively identified
> the truck as being involved in the shooting.

(Ex. 19 at Exhibit E).  Although none of the witnesses were able

to identify the victim's shooter, nothing in Officer Pufahl's

report contradicted the testimony at trial or identified anyone

other than Petitioner as the shooter.  The post-conviction court

reasonably concluded that Petitioner could not demonstrate

prejudice from counsel's failure to call Officer Pufhal as a

witness at trial.

Claim Three is denied pursuant to 28 U.S.C. § 2254(d).

**D.   Claim Four**

Petitioner asserts that counsel was ineffective for failing

to properly cross examine witness Anthony Pribble (Doc. 5 at 9).

Petitioner asserts that "Detective Pribble was the only detective

who could have testified that all the witnesses at the show-up
line-up following the detention of the suspects identified the
shooter solely by the 'sports jersey' that he was wearing." Id.

Petitioner raised this claim in his Rule 3.850 motion, and
the post-conviction court denied the claim as follows:

> The transcript of the trial indicates that
> Detective Pribble knew the victim from his
> past, had taken photographs of the victim, and
> attended the autopsy.   The State asked no
> further questions.   The Defense asked on
> cross-examination whether he had ever arrested
> Jewaun Platt, the victim, in the past.
> Detective  Pribble  could  not  recall.
> Detective Pribble was then asked if any of his
> colleagues had arrested Platt in the past.
> The State objected and the objection was
> sustained.   Any further questions by defense
> counsel that the Defendant would have liked to
> have been asked would have been outside the
> scope  and  as  such  excluded  from  trial.
> Defense counsel cannot be deemed ineffective
> for failing to prevail on a meritless issue.
> Teffeteller v. Dugger, 734 So. 2d 1009, 1019
> (Fla. 1999). The Court finds that the
> defendant has failed to meet the burden of
> demonstrating that counsel acted deficiently
> or that Defendant was prejudiced within the
> meaning of Strickland.

(Ex. 25 at 5-6) (internal citations to the record omitted).
Florida's Second District Court of Appeal per curiam affirmed the
post-conviction court's rejection of this claim (Ex. 30).   A
review of the record supports the state courts' rejection of this
claim.

The law in Florida is well settled that "questions on cross-
examination must either relate to credibility or be germane to the

matters brought out on direct examination." Steinhorst v. State,
412 So. 2d 332, 337 (Fla. 1982).  On direct examination, the state
asked Detective Pribble whether he knew the victim and whether he
attended his autopsy (T. at 187-89).  Detective Pribble was not
questioned on direct examination about any witness' identification
of the shooter or the clothing the shooter was wearing.  In
addition, whether the witnesses identified the shooter as wearing
a sports jersey is irrelevant to the truthfulness of Detective
Pribble's testimony.  Accordingly, the post-conviction court
reasonably concluded that Petitioner's proposed questions would
have been impermissible on cross-examination.  Counsel was not
ineffective for failing to pursue a futile line of questioning.
See Brownlee v. Haley, 306 F.3d 1043, 1066 (11th Cir. 2002)
(holding that counsel was not ineffective for failing to raise
issues that clearly lack merit).

   Claim Four is denied pursuant to 28 U.S.C. § 2254(d).

   **E.   Claim Five**

   Petitioner asserts that trial counsel was ineffective for
failing to argue that the trial court lacked subject matter
jurisdiction (Doc. 5 at 11).  Specifically, he claims that "the
felony information filed by the State against him was not based on
testimony given under oath by a material witness, as set forth and
mandated by the Florida Constitution." Id.

Petitioner raised this claim in his Rule 3.850 motion where it was denied by the post-conviction court as follows:

> In Defendant's third (3) issue, he raises a claim of a defective charging document. Defendant argues that the charging document was not taken under oath and did not include testimony of the material witness or witnesses as set forth in the Florida Constitution. Defendant's claim is conclusively refuted by the record. On August 30, 2004, the State filed a two (2) page charging information. The charging document was then properly sworn and notarize on July 28, 2004. This Court finds, in agreement with the State, that there is nothing defective or deficient regarding the charging document. As such, Defense counsel cannot be deemed ineffective for failing to prevail on a meritless issue.

(Ex. 25 at 6) (internal citations to the record omitted). Florida's Second District Court of Appeal *per curiam* affirmed the post-conviction court's rejection of this claim. Petitioner does not identify any defect in the state court's adjudication of this claim.

Rule 3.140(g) of the Florida Rules of Criminal Procedure requires that the state attorney or a designated assistant state attorney sign a felony information under oath affirming good faith in instituting the prosecution and certifying the receipt of testimony under oath from the material witness or witnesses to the offense. The information in Petitioner's case charges second degree murder under Florida Statute § 782.04(2), and Petitioner does not complain that the allegations in his charging document

did not contain the essential elements of his offense (Ex. 23 at B).  The information includes the signature and oath of an assistant state attorney required under Rule 3.140(g).  Id. Consequently, counsel had no basis on which to object to the information. See Jones v. Barnes, 463 U.S. 745, 751 (1983) (trial counsel has no duty to raise a frivolous claim).

Moreover, Petitioner cannot show prejudice because even had counsel filed a motion to dismiss the allegedly defective information, it would not have prohibited further proceedings against him in connection with the charges because the state would merely have proceeded upon a second amended information. See Alba v. State, 541 So. 2d 747, 748 (Fla. 3d DCA 1989) ("Clearly, the fact that the defendant was tried upon an unsworn Information does not rise to such a level of error which would entitle the defendant to a complete release from the charges brought against him.").

Claim Five fails to satisfy either prong of Strickland, and is denied pursuant to 28 U.S.C. § 2254(d).

**F. Claim Six**

Petitioner asserts that the prosecution knowingly allowed a testifying witness to lie under oath on the stand (Doc. 5 at 13). Specifically, he claims Damean Mitchell falsely testified at trial that: (1) Petitioner was the only individual chasing the victim down the road; (2) he observed Petitioner fumbling in his waistband prior to hearing gunshots; and (3) he knew Petitioner prior to the

shooting. Id. Petitioner asserts that he and Mitchell were mistakenly housed together in prison and Mitchell told him that "he had nothing against him, but he had to testify against him the way the prosecutor wanted to get a break on some drug charges." Id.

Petitioner raised this claim in his Rule 3.850 motion, and the post-conviction court noted that there is a distinction between inconsistent statements and perjured testimony (Ex. 25 at 7). The post-conviction court explained:

> The second prong of Giglio requires the Defendant to show that the prosecutor knew of the false testimony. In his motion, the Defendant makes a conclusory statement that the prosecutor knew that the testimony was false. This Court can find nothing in the record to indicate that the Prosecutor knew that Mitchell was providing false testimony. Additionally, upon a review of the deposition of Mitchell and his subsequent trial testimony, this Court can find no obvious indication that Mitchell changed his testimony, except for minor inconsistencies which were shown on cross-examination by the Defense. During cross-examination, Mitchell was questioned whether he had seen who had fired the shot. He stated that he had not seen the shooter, and was only assuming that it was the Defendant. If the totality of the testimony presented from Mitchell is to be considered, then this Court cannot find that Mitchell's testimony on direct was prejudicial, as defense counsel questioned and elicited testimony from Mitchell that he did not see the shooter.

(Ex. 25 at 7-8) (internal citations to the record omitted).

Florida's Second District Court of Appeal per curiam affirmed the

post-conviction court's denial of the claim (Ex. 30).   A review of the record and applicable law supports the state courts' conclusions.

In Giglio v. United States, 405 U.S. 150 (1972), the Supreme Court held that when the prosecution solicits or fails to correct known false evidence, due process requires a new trial where "the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury." Id. at 154.   On habeas review, a petitioner must meet a more onerous standard to justify relief based on a Giglio violation.   The federal habeas petitioner must prove: (1) the prosecutor knowingly used perjured testimony or failed to correct what he subsequently learned was false testimony (a Giglio violation); and (2) that the error had "substantial and injurious effect or influence in determining the jury's verdict." Trepal v. Sec'y, Fla. Dep't of Corr., 684 F.3d 1088, 1112 (11th Cir. 2012) (applying the harmless error test that applies to federal habeas review of state convictions set forth in Brecht, 507 U.S. at 637).   Petitioner has satisfied neither of these requirements.

As noted by the trial court, although there were discrepancies between Mitchell's police statement, deposition testimony, and

trial testimony, they were relatively minor.[6]  First, Mitchell testified at trial that Petitioner and the pickup truck's front seat passenger chased the victim on foot, but that the passenger eventually stopped the pursuit, and Petitioner continued to give chase (T. at 214-15).  In his police interview, Michell was asked, "how many guys were actually chasin' him out on foot?"  Petitioner stated that "[t]here was two dudes on feet, the other, the third dude stayed in the truck." (Ex. 20).  That one pursuer may have abandoned the foot chase earlier than the other does not indicate that Mitchell fabricated his trial testimony and could not have had a substantial and injurious effect on the jury's verdict.  See Hays v. State of Alabama, 85 F.3d 1492, 1499 (11th Cir. 1996) (use of testimony that is inconsistent with a witness's prior testimony or that of a co-defendant does not suffice to show that the proffered testimony was false).

Next, Mitchell testified at trial that Petitioner fumbled with his waistband after exiting the truck (T. at 213-14), whereas no mention of Petitioner's waistband was made in the portions of Mitchell's prior statements. However, there is no indication in his prior statements that Mitchell changed his testimony on this issue or that Mitchell told police that he did not see Petitioner

---

[6] Neither Mitchell's entire police statement nor deposition were provided to this Court.  However, Petitioner attached portions of both to his Rule 3.850 motion (Ex. 20).

fumble with his waistband.   Moreover, on cross examination, defense counsel clarified that Mitchell had not actually seen the victim get shot:

> Q.   All right.   So when you say that my client shot him, you are not speaking from personal knowledge?   In other words, you did not see it happen; is that correct?
>
> A.   I didn't see it happen.
>
> Q.   Okay.
>
> A.   I said when he was fumbling.
>
> Q.   Sorry?
>
> A.   I didn't see him – I didn't see the actual shot.   I seen him when he was fumbling with the – with his waistband.
>
> Q.   You did not see a gun –
>
> A.   No, sir.
>
> Q.   -- is that correct?
>
> A.   No, sir.
>
> Q.   Okay.   So you have no idea what was in his waistband?
>
> A.   That's right
>
> Q.   You are just assuming things; is that correct?
>
> A.   That's right.

(T. at 226).   Given that there is no identified discrepancy or false testimony regarding Petitioner's waistband, Mitchell's testimony on this subject does not demonstrate a Giglio violation. See United States v. Meros, 866 F.2d 1304, 1309 (11th Cir. 1989)

(a prosecutor has no duty to correct a statement that is not false).

Finally, at his deposition, Mitchell denied knowing who Petitioner was on the night of the shooting (Ex. 20). However, at trial, when asked whether he knew "a Michel Thomas", Mitchell answered, "I don't know him but I have seen him." (T. at 209). On cross-examination, Mitchell stated that he had seen Petitioner before when he (Petitioner) came to his mother's house. Id. at 223. Defense counsel challenged this statement by having Petitioner review his prior deposition testimony; subsequently, Mitchell admitted that he had formerly testified that he "didn't know none of these people" when asked about the identity of the assailants. Id. at 225. Given defense counsel's impeachment of Mitchell's testimony, Petitioner has not demonstrated that Mitchell's equivocation on whether he had known of Petitioner prior to the shooting had a substantial and injurious effect on the jury's verdict.

Given Petitioner's failure to show that any of Mitchell's statements at trial were actually false or had a substantial and injurious effect on the jury's verdict, Petitioner is not entitled to federal habeas relief on his Giglio claim.

### G.   Claim Seven

Petitioner asserts that the cumulative effect of counsel's errors and trial court error deprived him of his right to due

process (Doc. 5 at 14). This Court need not determine whether, under the current state of Supreme Court precedent, cumulative error claims can ever succeed in showing that the state court's adjudication on the merits was contrary to or an unreasonable application of clearly established federal law. Petitioner has not shown an error of constitutional dimension with respect to any federal habeas claim. Therefore, he cannot show that the cumulative effect of the alleged errors deprived him of fundamental fairness in the state criminal proceedings. See Morris v. Sec'y, Dep't of Corr., 677 F.3d 1117, 1132 (11th Cir. 2012) (refusing to decide whether post-AEDPA claims of cumulative error may ever succeed in showing that the state court's decision on the merits was contrary to or an unreasonable application of clearly established law, but holding that petitioner's claim of cumulative error was without merit because none of his individual claims of error or prejudice had any merit); Forrest v. Fla. Dep't of Corr., 342 F. App'x 560, 565 (11th Cir. 2009) (noting absence of Supreme Court precedent applying cumulative error doctrine to claims of ineffective assistance of counsel, but holding that the petitioner's cumulative error argument lacked merit because he did not establish prejudice or the collective effect of counsel's error on the trial); Hill v. Sec'y, Fla. Dep't of Corr., 578 F. App'x 805 (11th Cir. 2014) (same). Petitioner is not entitled to federal habeas relief.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV.  **Certificate of Appealability**[7]

Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a certificate of appealability ("COA").  "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003).  Petitioner has not made the requisite showing in these circumstances.

---

[7] Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." *Id*.  As this Court has determined that Petitioner is not entitled to habeas corpus relief, it must now consider whether Petitioner is entitled to a certificate of appealability.

Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

ACCORDINGLY, it is hereby **ORDERED:**

1.   The Florida Attorney General is dismissed from this action.

2.   Claim One of Petitioner's amended 28 U.S.C. § 2254 petition (Doc. 5) is **DISMISSED**, alternatively, Claim One is **DENIED.** All remaining claims are **DENIED**.

3.   Petitioner is **DENIED** a certificate of appealability.

4.   The Clerk of Court is directed to terminate any pending motions, enter judgment accordingly, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on this __26th__ day of October, 2015.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

SA: OrlP-4
Copies: Michel Thomas
Counsel of Record